## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

| | |
|---|---|
| **RANDALL LENNON BOBBITT,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 2:14-18702** |
| ) | |
| **CAROLYN. W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| **Defendant.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered June 30, 2014 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 11 and 12.), and Plaintiff's Reply. (Document No. 13.)

The Plaintiff, Randall Lennon Bobbitt (hereinafter referred to as "Claimant"), filed an application for DIB on March 14, 2011 (protective filing date), alleging disability as of June 1, 2010, due to residuals of neck injury, residuals of back injury, arthritis, and depression.[1] (Tr. at 11, 55, 115-17, 118-19, 145 .) The claim was denied initially and upon reconsideration. (Tr. at 11, 53-54, 55-57, 61-63.) On December 30, 2011, Claimant requested a hearing before an Administrative Law

---

[1] On his form Disability Report - Appeal, Claimant asserted that his conditions had worsened. (Tr. at 166.) He indicated that he had "to use a cane 60 percent of the time," was wearing a "neck brace more often," and that it "was harder to get out of bed." (Tr. at 166.)

Judge (ALJ). (Tr. at 11, 67-68.) A hearing was held on March 28, 2013, before the Honorable William R. Paxton. (Tr. at 11, 24-52.) By decision dated April 4, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-19.) The ALJ's decision became the final decision of the Commissioner on April 21, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on June 18, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph © of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, June 1, 2010. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease of the cervical spine, grade I anterolisthesis of C4 on C5, major depressive disorder, and anxiety disorder," which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 13, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for light work, as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never perform climbing of ladders, ropes or scaffolds; can occasionally perform balancing, kneeling, stooping, crouching, crawling, and climbing of ramps and stairs; must avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards such as heights and machinery, can only occasionally perform overhead reaching; and is limited to understanding, remembering, and carrying out simple instructions.

5

(Tr. at 15, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 17, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a night cleaner, shipping/receiving clerk, call out operator, document preparer, and food sorter, at the unskilled, light level of exertion. (Tr. at 17-18, Finding No. 10.) On this basis, benefits were denied. (Tr. at 18, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 25, 1965, and was 47 years old at the time of the administrative hearing on March 28, 2013. (Tr. at 17, 29, 118.) The ALJ found that Claimant had at least a high

school education and was able to communicate in English. (Tr. at 17, 29, 146.) In the past, he worked as a roof bolter and section foreman. (Tr. at 17, 44-45, 146, 152-62.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to include limitations which accounted for his severe impairments and the limitations assessed by the ALJ in assessing his RFC (Document No. 11 at 8-9.) Claimant acknowledges the ALJ's findings that he had moderate difficulties in maintaining concentration, persistence, and pace. (Id. at 8.) These findings were based in part on the findings of consultative examiner, Donna Cooke, M.A. Claimant also acknowledges however, that the ALJ, in his RFC assessment, limited him to understanding, remembering, and carrying out simple instructions. (Id.) Claimant contends however, that the mental RFC assessment did not accommodate adequately the moderate limitations in concentration, persistence, or pace as assessed by the ALJ. (Id. at 8.)

Regarding his physical limitations, Claimant asserts that the ALJ omitted from his RFC the objective physical limitations noted by consultative examiner Dr. William Waltrip, whose opinion the ALJ assigned great weight. (Id. at 9.) Particularly, Dr. Waltrip noted significant limitations regarding Claimant's ability to flex his neck laterally and to extend his neck, which limitations were excluded by the ALJ in his RFC. (Id.) Claimant notes that when his attorney posed a hypothetical question to the VE with Dr. Waltrip's limitations, the VE testified that work was precluded. (Id.)

In response, the Commissioner asserts that based on the objective evidence, Claimant's treatment history, and the medical opinions, the ALJ's RFC assessment is supported by substantial

evidence. (Document No. 1 at 10.) The Commissioner notes that Claimant's primary care provider failed to assess any limitations resulting from his impairments. (Id.) The Commissioner asserts that Claimant's physician's assistant notes documented anxiety, that Dr. Cooke assessed only mild limitations, and that Dr. Saar opined that Claimant's impairments were non-severe. (Id.) The Commissioner contends that the ALJ adequately accommodated the moderate limitations in concentration, persistence, or pace when he limited him to understanding, remembering, and carrying out simple instructions. (Id. at 11.) The Commissioner notes that the restrictions assessed at step three were not a RFC assessment but were used to rate the degree of Claimant's mental impairments. (Id.)

Regarding Dr. Waltrip's opinion, the Commissioner asserts that the ALJ was not required to include every degree of limitation despite having given the opinion great weight. (Id. at 12.) The Commissioner notes that although Dr. Waltrip found a decreased range of cervical spine motion, Claimant's treating providers also found decreased ranges of motion but did not assess any functional limitations. (Id. at 13.) Accordingly, the Commissioner contends that the ALJ properly accounted for his decreased range of cervical spine motion with lift/carry limitations, overhead reaching limitations, and postural maneuver limitations. (Id.)

Claimant asserts in reply that the ALJ failed to conduct a function-by-function assessment. (Document No. 13 at 1-2.) Respecting his physical impairments, Claimant asserts that the ALJ committed reversible error when he failed to account for the degenerative disc disease of the cervical spine. (Id. at 2.) Claimant asserts that the omission was particularly egregious because he gave great weight to Dr. Waltrip, who noted extreme limitations in Claimant's ability to flex and extend his neck. (Id.)

Claimant also alleges that the Commissioner's decision is not supported by substantial

8

evidence because the ALJ erred in assessing his credibility. (Document No. 11 at 9-13.) He asserts that the reasons the ALJ gave to discredit his testimony were improper. (Id. at 11-13.) In response, the Commissioner asserts that the ALJ thoroughly discussed the medical evidence of record and explained that Claimant was less than fully credible. (Document No. 12 at 15.) The ALJ properly determined that Claimant's subjective reports were inconsistent with the objective evidence. (Id.)

Analysis.

1. RFC Assessment.

Claimant first alleges that the ALJ erred in assessing his RFC. (Document No. 11 at 8-9.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2013). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that

the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (*Citing* Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also, Ashby v. Colvin, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2013).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2013). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in

11

20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

On October 7, 2011, Donna J. Cooke, M.A., conducted a consultative psychological evaluation. (Tr. at 268-71.) Ms. Cooke noted Claimant had difficulties verbalizing answers and thoughts as he struggled to control his emotions. (Tr. at 268.) Ms. Cooke observed on mental status exam that Claimant's persistence and pace were within normal limits; his social functioning, concentration and remote memory were mildly deficient, and his immediate and recent memory were average. (Tr. at 269-70.) She diagnosed major depressive disorder, single episode, severe. (Id.)

Based in part on Ms. Cooke's assessment, the ALJ found that Claimant had moderate limitations in concentration, persistence, or pace and consequently assessed a RFC that limited him to understanding, remembering, and carrying out simple instructions. The Fourth Circuit has held that an "ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638. Here, apparently in an effort to accommodate for deficiencies in concentration, persistence, or pace, the ALJ included in his hypothetical questions, limitations to understanding, remembering, and carrying out simple tasks. (Tr. at 45.) Thus, the ALJ adequately considered Claimant's ability to perform simple tasks and considered his ability to stay on task as opposed to the facts in Mascio. Accordingly, the undersigned finds that the ALJ's hypothetical and RFC adequately reflected Claimant's ability to stay on task and is supported by substantial evidence.

Regarding his physical impairments, the undersigned notes that on June 7, 2011, Dr. William E. Waltrip, M.D., conducted a consultative physical examination of Claimant. (Tr. at 226-30.) Claimant alleged residuals of neck and back injury, arthritis, and depression. (Tr. at 227.) Range of

back motion was decreased and muscle spasms were present. (Tr. at 227-28.) Claimant ambulated without assistance, was able to make a fist and had good grip strength, and was able to perform fine manipulations. (Tr. at 228.) He was able to walk heel to toe and tandem walk, squat, and walk on tips of toes and heels. (Id.) Dr. Waltrip diagnosed injury to right neck resulting in disc disease of the cervical spine, back pain, and degenerative arthritis of the neck. (Id.) He opined that Claimant had neck limitation, which would limit his ability to lift a heavy object and would minimally limit his ability to walk, stand, or sit. (Id.)

The ALJ acknowledged Dr. Waltrip's opinion and accorded it great weight. Although the ALJ did not incorporate the range of neck motion limitations assessed by Dr. Waltrip, the ALJ was not required to adopt every degree of limitation assessed. The medical evidence established that Claimant's primary care providers also assessed neck limitations but failed to assign any functional limitations to them. (Tr. at 257-65, 297-312.) The ALJ nevertheless, limited Claimant to lifting and carrying at the light exertional level. (Tr. at 15.) He further limited Claimant to performing only occasional overhead reaching. (Id.) Accordingly, the undersigned finds that the ALJ adequately accounted for Claimant's decreased range of neck motion and that the RFC assessment is supported by substantial evidence.

2. Credibility Assessment.

Claimant also alleges that the ALJ erred in assessing his credibility. A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then

the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2013). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2013).

> SSR 96-7p repeats the two-step regulatory provisions:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a

15

claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

    The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 15.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 15.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 15-17.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision." (Tr. at 15.)

    The ALJ acknowledged and summarized Claimant's testimony and determined that the record contained several inconsistencies. First, the ALJ noted that despite having lived alone, he reported that he did not cook, clean, do household chores, go outside, or shop. (Tr. at 15.) As Claimant points out however, Claimant testified that his niece lived beside him and cooked for him, went grocery shopping for him, and did his household chores. (Tr. at 42.) Second, Claimant testified that he could sit only three to four minutes before changing positions. (Id.) The ALJ noted however, that he sat through the

entire hearing without difficulty. (Tr. at 16.) Claimant asserts that the sit and squirm test is improper in our Circuit and that Claimant testified he needed only to change position and could sit 30 to 40 minutes. Third, Claimant was able to perform a wide range of tasks at a consultative examination by Dr. Waltrip, which contradicted his extreme alleged physical limitations. (Id.) As noted above, Claimant was able to squat, toe and heel walk, heel to toe walk, and tandem walk. (Tr. at 16, 228.) Although the ALJ may have overlooked Claimant's niece regarding the first discrepancy, substantial evidence supports the remaining discrepancies in evidence.

The ALJ then considered the objective evidence of record, which contained reference to the nature and severity of Claimant's impairments as well as the treatment therefor. (Tr. at 16-17.) The ALJ considered Claimant's activities, as discussed above. Accordingly, the undersigned finds that the ALJ properly considered Claimant's credibility in accordance with the Regulations and that the ALJ's finding that Claimant was not entirely credible is supported by the substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and

Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 31, 2015.

R. Clarke VanDervort
United States Magistrate Judge