**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

RANDALL LENNON BOBBITT,

                    Plaintiff,

v.                                                        CIVIL ACTION NO.   2:14-cv-18702

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

        Pending before the Court is Plaintiff Randall Lennon Bobbitt's Complaint seeking review

of the final decision of the Commissioner of the Social Security Administration (the

"Commissioner"). (ECF No. 2.) By standing order entered on May 7, 2014 and filed in this case

on June 30, 2014, this action was referred to United States Magistrate Judge R. Clarke VanDervort

for submission of proposed findings and recommendations for disposition ("PF&R"). (ECF No.

4.) On August 31, 2015, Magistrate Judge VanDervort entered his PF&R, in which he recommends

that this Court deny Plaintiff's Motion for Judgment on the Pleadings ("Plaintiff's Motion"), (ECF

No. 11), grant Defendant's request for judgment on the pleadings ("Defendant's Motion"), (ECF

No. 12), affirm the final decision of the Commissioner, and dismiss this matter. (ECF No. 14.)

Plaintiff filed timely objections to the PF&R (the "Objections") on September 14, 2015. (ECF No.

15.)

1

For the reasons provided herein, the Court **SUSTAINS** the Objections, (ECF No. 15), in part, **DECLINES TO ADOPT** the PF&R, (ECF No. 14), **GRANTS** Plaintiff's Motion, (ECF No. 11), insofar as it requests remand of this case, **DENIES** Defendant's Motion, (ECF No. 12), **REVERSES** the final decision of the Commissioner, **REMANDS** this case pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order, and **DISMISSES** this action from the Court's docket.

## I. *Procedural Background*

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed an application for disability insurance benefits on March 14, 2011, alleging disability as of June 1, 2010. (ECF No. 9-6 at 2–6.) The application was initially denied on June 22, 2011, (ECF No. 9-4 at 2–6), and upon reconsideration on November 1, 2011, (*id.* at 8–10).

A hearing was held before Administrative Law Judge William R. Paxton (the "ALJ") on March 28, 2013. (ECF No. 9-2 at 25–53.) On April 4, 2013, the ALJ issued an unfavorable decision.[1] (*Id.* at 9–20.) The Appeals Council denied review of the ALJ's decision on April 21, 2014. (*Id.* at 2–4.) Thereafter, on June 18, 2014, Plaintiff filed the Complaint in this Court. (ECF No. 2.)

---

[1] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since June 1, 2010, the alleged onset date." (ECF No. 9-2 at 14.) At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical spine, grade I anterolisthesis of C4 on C5, major depressive disorder, and anxiety disorder." (*Id.*) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 14–16.) The ALJ next found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)," with certain listed limitations. (*Id.* at 16–18.) The ALJ also found that Plaintiff "is unable to perform any past relevant work." (*Id.* at 18.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 18–19.) The ALJ relied on the testimony of a vocational expert in making this step-five determination. (*See id.* at 19.)

2

## II.  Standard of Review

**A.      Review of the PF&R**

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

**B.      Review of the ALJ's Findings and Decision**

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see, e.g.*, 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its]

judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) and *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[2] *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "If [the adjudicator] can find that [a claimant is] disabled or not disabled at a step" in the "sequential evaluation" process, the adjudicator "make[s] [their]

---

[2] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65; *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

4

determination or decision and [does] not go on to the next step." 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

### III. Discussion

Plaintiff argues, in pertinent part, that that the Magistrate Judge erred in finding that substantial evidence supports the ALJ's residual functional capacity ("RFC") determination, insofar as the RFC failed to address Plaintiff's range-of-motion limitations due to neck and spinal impairments. (See ECF No. 15 at 4–5.) The Court agrees.

RFC "is a determination of a claimant's capabilities, after account for [their] impairments, which occurs" prior to step four "of the five-step sequential evaluation of disability claims." *Blodgett v. Astrue*, Civil Action No. 5:08–cv–00284, 2009 WL 3061987, at *5 (S.D. W. Va. Sept. 22, 2009) (citing 20 C.F.R. § 416.945(a)). When assessing a claimant's RFC, the ALJ "consider[s] [the claimant's] ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(4) & 416.945(a)(4). "RFC represents the most that an individual can do despite his or her limitations or restrictions." Soc. Sec. Admin., SSR 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34,474, 34,376 (July 2, 1996). "RFC takes into account both physical and mental impairments that may limit the claimant's work-related abilities." *Blodgett*, 2009 WL 3061987, at *5 (citing 20 C.F.R. § 416.945(b)–(c)). "All relevant evidence—medical, observational, and subjective—must be considered." *Id.* (citing 20 C.F.R. § 416.945(a)(3)); *see also* SSR 96-8p, 61 Fed. Reg. at 34,477 (listing examples of evidence the ALJ must consider in making the RFC determination).

Social Security Ruling 96-8p "instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 61 Fed. Reg. at 34,475). "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. at 34,475. Additionally, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 34,478.

"[T]he determination of a claimant's RFC is ultimately the province of the ALJ as the representative of the Commissioner." *Blodgett*, 2009 WL 3061987, at *6 (citation omitted); *see also* 20 C.F.R. § 404.1527(d)(2) (stating that "[a]lthough [ALJs] consider opinions from medical sources on issues such as" a claimant's RFC, "the final responsibility for deciding [such] issues is reserved to the Commissioner" (citations omitted)). "A reviewing court's sole responsibility is to determine whether the ALJ's determination of the claimant's RFC is rational and based on substantial evidence." *Blodgett*, 2009 WL 3061987, at *6 (citing *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)). However, remand "may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Mascio*, 780 F.3d at 636 (alteration in original) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). *See generally id.* (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis . . . given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested" (citation omitted)).

Plaintiff argues that "[t]he ALJ's . . . RFC finding [was] . . . deficient in that [it] did not include functional restrictions to account for [Plaintiff's] severe cervical spine impairment, his limited range of motion of his cervical spine, and the pain he experienced when he moved his neck." (ECF No. 15 at 4.) In particular, Plaintiff argues that the ALJ failed to "account[] for the limitations that were opined by a physician whose opinion he gave great weight"—namely, Dr. William Waltrip. *Id.*

In his RFC narrative, the ALJ noted that "[o]bjective medical evidence shows [Plaintiff] has a neck impairment," including "grade I anterolisthesis of C4 on C5 with prominent left uncovertebral hypertrophy contributing to neural foraminal compromise." (ECF No. 9-2 at 17.) The ALJ notes that "[a]t a June 2011 consultative examination [Plaintiff] had a limitation of lateral flexion of his cervical spine left and right to only 15 degrees" and "[Plaintiff's] flexion and extension of his cervical spine was 30 degrees in each direction." (*Id.*) The ALJ then provided the following discussion regarding the evidence contributed by Dr. William Waltrip:

> [A] consultative examiner, Dr. William Waltrip, stated on June 7, 2011, that [Plaintiff] does have limitation of function of his neck. This would limit his ability to lift a heavy object, however, it should minimally limit his ability to walk, stand, or sit. He has no limitation of hearing, seeing, or speaking and can understand normal conversational speech. He walks with a normal gait. There is no motor dysfunction, sensory loss, or reflex abnormalities. He does not use an assistive device for ambulation. He has good grip strength and can perform fine and gross manipulations. *The range of motion testing was limited in his inability to lateral flex his neck and to flex and extend his neck. This was limited in function and caused him discomfort . . . . The undersigned gives this opinion significant weight because it comes from an examining source and is supported by the claimant's neck impairments and range of motion tests . . . .*

(*Id.* at 17 (emphasis added).) The ALJ also considered the test results and opinion evidence of other doctors. (*See id.* at 16–18.) However, the only evidence the ALJ cites regarding Plaintiff's

7

range-of-motion limitations is the above discussion pertaining to Dr. Waltrip's findings and opinions. (*See id.*) The ALJ then found that Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never perform climbing of ladders, ropes or scaffolds; can occasionally perform balancing, kneeling, stooping, crouching, crawling, and climbing of ramps and stairs; must avoid concentrated exposure to extreme cold, vibration, and hazards such as heights and machinery; can only occasionally perform overhead reaching; and is limited to understanding, remembering, and carrying out simple instructions.

(*Id.* at 16.)[3]

The Court finds that substantial evidence does not support the ALJ's RFC finding, as it pertains to Plaintiff's neck limitations. The ALJ notes that test results indicate Plaintiff has range-of-motion limitations. (*Id.* at 17.) The ALJ also notes that Dr. Waltrip—who performed these tests—stated that "[t]he range of motion testing was limited in his inability to lateral flex his neck and to flex and extend his neck," which "caused [Plaintiff] discomfort." (*Id.*) The ALJ accorded this evidence "significant weight because it comes from an examining source and is supported by [Plaintiff's] neck impairments and range of motion tests." (*Id.*) The ALJ does not reference any other evidence in the RFC narrative that conflicts with Dr. Waltrip's test results and opinion evidence regarding Plaintiff's range-of-motion limitations. (*See id.* at 16–18.)

---

[3]  The term "light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the ALJ] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Despite this uncontroverted evidence regarding Plaintiff's neck impairments, the ALJ omitted any reference to Plaintiff's range-of-motion limitations in the RFC. (*See id.* at 16 & 46.) The ALJ provides no explanation for these omissions and the ALJ's RFC narrative does not otherwise provide any indication as to why the ALJ would choose to omit this pertinent information from the RFC. (*See id.* at 16–18.) Based on this record, the Court is "left to guess about how the ALJ arrived at his conclusions on [Plaintiff's] ability to perform relevant functions." *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015); *cf. Young v. Bowen*, 858 F.2d 951, 956 (4th Cir. 1988) ("Absent contrary medical evidence, the Secretary lacked any basis to reject the competent judgment of a concededly reliable expert."). The Court therefore finds that the ALJ erred by failing to include Plaintiff's range-of-motion limitations in the RFC, despite reliable and uncontroverted evidence in the record supporting such limitations. *See, e.g.*, *Mascio*, 780 F.3d at 637 (finding that remand was necessary where, in part, the ALJ failed to explain how he reached the RFC findings).

However, this finding of error in the ALJ's decision does not end the instant analysis. If an administrative law judge errs in a part of their decision, the court "should nonetheless affirm the ALJ's decision," so long as "the court finds the error to be 'harmless.'" *Held v. Colvin*, Civil Action No. 7:12–CV–00457, 2014 WL 556266, at *8 (W.D. Va. Feb. 12, 2014) (citation omitted); *cf. Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."). An error is harmless if it "clearly had no bearing on the procedure used or the substance of the decision reached." *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964)). Stated another way, "[r]emand is not required where, despite [the] ALJ's error, [the] ALJ

9

would have reached the same result notwithstanding his error." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D. W. Va. 2009) (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)); *see also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (noting that an administrative law judge's error is harmless if it "was inconsequential to the ultimate disability determination" (citations omitted)); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." (citing *Ill. v. Interstate Commerce Comm'n*, 722 F.2d 1341, 1349 (7th Cir. 1983))).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted); *see also Camp v. Massanari*, 22 F. App'x 311, at *1 (4th Cir. 2001) (finding that an error by the administrative law judge was harmless when the plaintiff "made no showing of prejudice"). In *Shinseki*, the Supreme Court analogized "review of ordinary administrative proceedings to appellate review of civil cases" in the context of a harmless error determination and provided the following useful discussion:

> To say that the claimant has the "burden" of showing that an error was harmful is not to impose a complex system of "burden shifting" rules or a particularly onerous requirement. In ordinary civil appeals, for example, the appellant will point to rulings by the trial judge that the appellant claims are erroneous, say, a ruling excluding favorable evidence. Often the circumstances of the case will make clear to the appellate judge that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm. If, for example, the party seeking an affirmance makes a strong argument that the evidence on the point was overwhelming regardless, it normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary. The party seeking to reverse the result of a civil proceeding will likely be in a position at least as good as, and often better than, the opposing party to explain how he has been hurt by an error.

10

556 U.S. at 409. *See generally Garner v. Astrue*, 436 F. App'x 224, 226 n.* (2011) (citing *Shinseki* in a harmless error discussion in a social security disability case).

The Court finds that the ALJ's error in omitting Plaintiff's range-of-motion limitations in the RFC—and the corresponding hypothetical that the ALJ provided to a vocational expert ("VE")—was not harmless error. At step five of the "sequential evaluation" process, the ALJ incorporated the RFC findings into the hypothetical he provided to a VE. (*See* ECF No. 9-2 at 46.) *See generally Mascio*, 780 F.3d at 636 (stating that "ALJs clearly use the [RFC] finding at steps four and five" of the "sequential evaluation" analysis (citation omitted)). The ALJ's hypothetical question to the VE was as follows:

> Hypothetically, if I were to assume an individual who is a younger person, as defined in the regulations; currently, age 47, who has a twelfth-grade or a high school education, as defined in the regulations; who has the past work you described; if I were to assume that that person was limited to only light work, as defined in the regulations, but who could never perform climbing of ladders, ropes, or scaffolds; who could occasionally perform balancing, kneeling, stooping, crouching, crawling, and climbing of ramps or stairs; must avoid concentrated exposures to extreme cold, vibration, and hazards, such as heights and machinery; and only occasionally perform overhead lifting, or overhead reaching rather not lifting, who is limited to understanding, remembering, and carrying out simple instructions -- based on those limitations, would there be any unskilled jobs that such a person could perform?

(*Id.*)[4] Based on this hypothetical, the VE testified that jobs exist in the national economy for an individual with Plaintiff's functional limitations. (*See, e.g.*, *id.* at 19 & 47.) The ALJ then relied on this testimony to find that Plaintiff is "not disabled." (*Id.* at 19.)

---

[4] The ALJ asked the VE follow-up questions with slight alterations to the hypothetical. (*See* ECF No. 9-2 at 47–49.) However, none of these additional questions included information related to Plaintiff's range-of-motion limitations. (*See id.*)

However, as Plaintiff notes, the VE's opinion changed when the hypothetical included range-of-motion limitations. (*See* ECF No. 15 at 4 (stating that the VE testified on cross-examination "that if the neck restrictions were added to the ALJ's controlling hypothetical question, the limitations of motion would preclude all employment" (citation omitted)).) During the disability hearing, Plaintiff's attorney and the VE engaged in the following exchange:

> [Plaintiff's Attorney:] [I]f we added to . . . the light hypothetical . . . , that our hypothetical person had a limited range of motion in their neck, so that they could only occasionally move their neck laterally and occasionally move their neck up and down, would they be able to do those jobs that you listed?
>
> [VE:] Don't think so. I'm know that's that [sic] true of the sedentary occupations, and it'd be my opinion that the light would be -- would require that the individual do more than occasional movement of the neck.

(*Id.* at 51–52.) Based on this exchange, it is clear that the VE would have materially altered his testimony if the hypothetical question included limitations regarding Plaintiff's range-of-motion in his neck. (*See id.*) Indeed, this exchange indicates that the VE would have testified that these limitations are inconsistent with the requirements of jobs in the "light work" category—the category of work provided in the ALJ's RFC findings. (*See id.*) As the ALJ relied on the VE's testimony to reach his decision of "not disabled," (*id.* at 19), the Court cannot find that the ALJ's decision would have been the same had he included Plaintiff's range-of-motion limitations in the RFC and hypothetical question. The Court therefore finds that the ALJ's error in omitting these limitations from his RFC and the corresponding hypothetical was not harmless. *See, e.g.*, *Ngarurih*, 371 F.3d at 190 n.8 (stating that an error is harmless if it "clearly had no bearing on the procedure used or the substance of the decision reached" (quoting *Mass. Trs. of E. Gas & Fuel Assocs.*, 377 U.S. at 248)).

In summary, the Court finds that the ALJ erred in omitting—without explanation—Plaintiff's range-of-motion limitations relating to his neck impairments from the RFC findings and that this error was not harmless. The Court therefore finds that the Magistrate Judge erred in finding that substantial evidence supports the ALJ's RFC determination. Accordingly, the Court **SUSTAINS** Plaintiff's Objections to the PF&R, insofar as the Objections argue that the Magistrate Judge erred in finding that the ALJ did not err in omitting Plaintiff's range-of-motion limitations from the RFC findings. (*See* ECF No. 15 at 4–5.) As the basis for the ALJ's error is a failure to explain his RFC findings—or lack thereof—regarding Plaintiff's limitations arising out of his neck impairments, the Court finds that the proper course is to remand this case. *See, e.g.*, *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985))).[5]

### IV. Conclusion

For the foregoing reasons, the Court **SUSTAINS** the Objections, (ECF No. 15), in part, **DECLINES TO ADOPT** the PF&R, (ECF No. 14), **GRANTS** Plaintiff's Motion, (ECF No. 11), insofar as it requests remand of this case, **DENIES** Defendant's Motion, (ECF No. 12), **REVERSES** the final decision of the Commissioner, **REMANDS** this case pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order, and **DISMISSES** this action from the Court's docket.

---

[5] In the Objections, Plaintiff also argues that the ALJ's hypothetical to the VE was deficient because it failed to provide sufficient information regarding Plaintiff's mental impairments. (*See* ECF No. 15 at 2–3.) As the Court finds that remand is appropriate based on the ALJ's deficient RFC finding, it does not reach Plaintiff's additional argument regarding the ALJ's hypothetical question.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 28, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

14